Good morning, your honors. Vince Bronco, Federal Defenders, on behalf of Mr. Quevedo. Section 3D, 1.2, subsection D, provides offenses covered by the following guidelines are to be grouped under this subsection. 2L1.1 appears on that list. The district court's failure to follow this instruction requires remand in this case. Did you have more than one victim involved? We have a person who's killed and a person who's severely injured. Correct, but subsection D of this multiple grouping doesn't require the same victim. If you look at 3D, 1.2, there's four provisions there. Only subsection A and subsection B require the same victim. And this is provided in the background to the commentary to this section. It specifically states counts involving different victims or societal harms in the case of victimless crimes are grouped together only as provided in subsection C or D. So your argument, as I understand it, is structural within the guidelines. So when you look at the text of subsection C and D for whether the counts involve substantially the same harm, this fact pattern, these counts do not fall within the substantive language of C or D. The offense level is determined largely on the basis of the total amount of harm or ongoing or continuous in nature. Instead, the only way this would fall under C or D is because the next sentence after subsection D says offense is covered by the following guidelines of every group. So you're reading the next sentence in the list of guidelines sections as part of subsection D? It is in subsection D. And this court has actually interpreted this exact subsection. I understand, but it was not addressing an instance with counts involving multiple victims. So, and it was a very terse analysis. It's not much. I think it's the Bueno Rostros or I'm forgetting the name. Rostrotori. Yes. So if I understand this right, this is the argument. It's based on the structure of the guideline. It's not the substance. It's not within subsection D because it falls within the description in the text, but because there's a list right after subsection D that includes this particular guideline 2L1. I think the list is in subsection D. That's a thing. Subsection D, as this court noted, it initially has this general principle that includes these different aggregate harms, etc. And then it provides a list of offenses that always are to be grouped under that section. And then a list of offenses that never are to be grouped with that section. And then as this court held, anything that's not on those lists is a case-by-case basis. So what do we do with the tension in the commentary to the guidelines that explains how you have multiple victims and there was a proposal that these would be grouped. I think the example in the commentary is there's an escape and three different people are stabbed. And the suggestion that they should all be grouped because it's one, essentially, event, one transaction. But then the drafter said, no, we wouldn't want to do that because that would then not adequately account for the criminal conduct and courts would have to depart or vary. So to me there seems to be some tension in this language. So how do we resolve that? Well, I think if you read on in that, I think, very section, they go on to talk about that counts involving different victims will still count under or can be groupable under subsection C or D. So, yes, there are some tension. But I'd also like to push back a little bit on this contention that Mr. Cayedo's conduct doesn't fall within this general principle. Because that last general principle states that the behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior. Transportation of undocumented people are by nature ongoing in nature and 2L1.1 is a guideline that takes into account of all these circumstances. There's enhancements under 2L1.1 for the number of people involved. There are enhancements for if there's reckless conduct and there are enhancements for if someone is injured or even dies. So that just accounts for different types of harm that can occur. It doesn't say that it's ongoing or continuous. This was one tragic car accident, right? It didn't continue. There weren't continuing events. He crashed the car. Somebody was killed and somebody was very, very seriously injured. That's one event. The transportation was a continuous event. It occurred over time. It was a continuing offense. It didn't happen at one specific moment. But the thing is... So every moment that the car's in motion is a continuing event. It's not one... So like the escape where the person's moving through the prison. They're escaping. They stab three people. That's continuous? Well, that's the thing. The stabbing is what caused the injury. I guess the accident could be here. But the problem is, again, it's not reading the full guideline. Because the full guidelines, when it's concerned with only the same victim, it says that in A and B. It says these offense must be under the same victim. How do you treat the... Let me back up. My understanding is that the defendant here was originally paid, I think, $10,000 to transport some people. He did so successfully the first time. Then he did the second one, and that's the one we're talking about here, where someone was killed, someone was seriously injured. Are you trying to group the earlier $10,000 event, I'll call it, and this one? No, that didn't group because that wasn't a charge count. They could look at the number of people, but it wouldn't affect the guideline analysis. So we're just looking at this single instance where the car crashed, and somebody died, and somebody was hurt, right? Yes. I would like to point out, not only is this case controlled by Buenos Aires Torres, but you'd be creating a circuit split with the 10th Circuit also. I know where you're going with this, but really? Because in that case, the court was considering pre-Booker a departure, an upward departure, and the district court had created pseudo groups because the court didn't feel that the criminal conduct was adequately covered. And it really focused on the departure and whether that was permissible, which now clearly it is after Booker. But it almost seems to me what you're arguing for may be a Pyrrhic victory in that, sure, the offenses, we decide they should have been grouped, and he wouldn't have received the one-level enhancement, but that means the district court can still adequately consider the criminal conduct and may very well vary or depart and depart upward significantly to account for a death and a serious injury. Your Honor, two points to that because there's actually two questions. First of all, Your Honor referred to a pre-Booker case. There's actually a post-Booker case, Munoz-Teo, where they specifically say, yes, these group under 3D1.1, and they were actually charged with four counts resulting in death, and they say they grouped. But then the court had discretion to do a departure. And yes, that's what should happen here. A remand to determine whether or not this district court judge, viewing all the circumstances, would impose a discretionary departure rather than the correct interpretation of the guidance. And both of those Tenth Circuit cases focus on the departure. Departure, only departure. Do you want to save any of your time? I would. Thank you, Your Honor. Well, all right. So let's hear from Mr. is it Ray? Rahy. Okay. Thank you, Your Honors. May it please the Court, Mark Rahy for the United States. Your Honors, the government's position is that the district court reasonably applied the grouping rules here. First and foremost, as the commentary says, the primary consideration of the grouping guideline is whether the offenses involve different victims. Here you have a death to one person, a serious bodily injury to another. Under the defense view, none of that really matters. It's just as if it were another victimless crime. But we would point out the penultimate paragraph to the commentary, which defense counsel quoted, but he left out part of it. It says counts involving different victims or societal harms in the case of victimless crimes are grouped together only as provided in subsection C and D. Elsewhere in the commentary, the Sentencing Commission makes clear that the run-of-the-mill immigration offense, which we see all the time in Southern District when people are not hurt, not injured, that's the victimless crime. That's where the only interest at harm is society's enforcement of the immigration laws. In a rare case like this or less common, our position is not unreasonable. And by that, I mean what the district court concluded. Throughout the commentary, it's clear that the issue of different harms to different victims should be something that's paramount. And here, I have already quoted that penultimate paragraph of the commentary. I would also point out to application note two, the last sentence specifically says ambiguities should be resolved in accordance with the purpose of this section as stated in the lead paragraph to identify group counts involving substantially the same harm. I don't know, I haven't heard yet from defense or seen in their briefs how death to one human being and substantial injury to another can be considered substantially the same harm. Is there a Ninth Circuit precedent that binds this panel that we have to address if we're going to take your view? Well, if you're talking about Glenn Rostro, the government's position, I mean, that's pretty, there's very little law that's, you know, approach this issue. Glenn Rostro was not an immigration case. And that's, you know, that's one thing. It didn't involve actual harms or injuries to different people, let alone to any person. I think it was a forgery case. As this Court is well aware, the defense is usually the first to point it out. Binding precedent is not, or, you know, published opinion is not binding authority for a proposition that was never advanced. Here, again, we have a situation where it was very tragic. Somebody died and then another person was injured. If you look at all the commentary here, it supports the government's position that those separate interests have to be vindicated. And so, to sum up your Honor's question, Glenn Rostro-Torres is there, and I know the defense relies heavily on it, but the government's position is that it's not controlling for those reasons. And, you know, especially here when you see that the commentary says, when there's cases of ambiguity and, you know, the Sentencing Commission, in fact, I'm looking at Note 3, this is what they're assuming is the baseline. The defendant is convicted of three counts of unlawfully bringing aliens into the U.S., all counts arising out of a single incident. They're grouped together. That's a situation where there is no injury and there is no death. Again, the proposition the government is advancing, this is not radical and this is not something that's going to throw the guidelines into chaos. This is something that just simply allows for separate interests to life and limb to be accounted. So, there seems to be a problem, though, with the structure of the guideline, which is what I was getting at with your opposing counsel. Do you agree that the list of guidelines that the offenses are to be grouped, which is right after subsection D, is part of subsection D? Correct. Or it is part, you agree? Yes, that is or right. Okay, so then you have the commentary saying when there's separate victims, it's grouped in accordance with either subsection C or D. That isn't, by your concession, part of subsection D. Okay, and then the other problem is that, while Buen Rostro is very terse, and I agree with you it's distinguishable in the type of harm, it does say Congress has determined that such offenses are categorically groupable under subsection 3D, 1.2D. And this is right after it's discussing, here's the list, the offense at issue in Buen Rostro Torres was within the list. So how do we get around that? I mean, if our court has said they're categorically groupable... No, again, and I'll admit that's not good for the government's position, but again, if Buen Rostro Torres is not assuming a situation where people are actually hurt or injured, again, that was a forgery case, I don't see how that's, you know, that that broad proposition can therefore govern facts that were not before the court. And that's the Webster versus Fall principle. Do you argue that even if the district judge erred and the guidelines calculation would have been off by one point, that that's harmless? How could we decide it was harmless? A case called United States v. Munoz Camarena, the fifth footnote, and I'm familiar with that case because I argued it 10 odd years ago, the first opinion that came out there said there's no harmless error, we move for rehearing, and the opinion was amended. And footnote five, Judge Pregerson, I guess it was a per curiam opinion, lays out four non-exclusive situations when you can find harmlessness. One of those is when, and that was, it's the fourth one, when the court performs the sentencing analysis with respect to an incorrect guidelines range that overlaps substantially with the correct guidelines range, such that the explanation for the sentence imposed is sufficient even as to the correct range. And the government's position is here, with just a one-level difference, what the defense wanted was a guideline range of 63 to 78, or I'm sorry, they wanted 57 to 71 months. What the district court found was 63 to 78, and then even after giving a variance, found 51 to 63. This is a very substantial overlap. And the district court gave a very thorough explanation, went over all the aggravating factors, the fact that the defendant had multiple times to yield to law enforcement and didn't, that somebody died, that somebody was injured, that the defendant did it before, then weighted against the mitigating factors, he's young, you know, he has a lot of family support. There's no challenge on this appeal to the sufficiency of that So the government's position is that we fall under that footnote. And I believe we cited an unpublished case, it's Solis, and that's just another, you know, that's an example of a panel of this court finding harmless error in the same situation. Now, yeah, arguendo. If we were to agree with the other side that the district court erred on the grouping issue, how could we say with certainty that the district court sentencing error was harmless? Well, based on the Munoz-Camarena, and I know they cite a case, and I forget what the name of it was, the very last sentence that the court said, with certainty, we can't, we can't stay that. But Munoz- Camarena cannot be ignored. It's on the books for at least 10 years. But how do we know? I mean, we would have to conclude that the district court was going to impose the same sentence. And here there was a departure down by a couple of points, and then the district court sentenced at the very bottom of that range. But isn't it conceivable that if the departure happened from one point lower, and the range was lower, the district court would have sentenced at the bottom of the lower range? Even admitting that it's conceivable, the government's position is that isn't enough for harmless error. And this is interesting, too. I know in the reply brief, the defense side... But isn't it really the flip side of that, that we have to be convinced that the district court would have imposed the same sentence anyway? No, I would say not, Your Honor. In fact, that's what I was getting to. There's a case, what it is, is that more probable than not, that the error did not materially affect the sentence. And the government's position here is, you know, that doesn't say with certainty, but that with certainty is sort of a gloss that's put at the very last sentence of an opinion. Even taking that standard, how could we say that here, with certainty? Again, it doesn't have, our position doesn't have to be with certainty. You know, Munoz-Camarena, we can't just ignore, if it says you have a substantial overlap in ranges and that the explanation given is good enough as to both, the government's position is it's not more probable than not that that's a material verdict. I can never stand before you and say it's certain that the court would give the same sentence. And what's ironic is, for a while... Unless the court said it. Well, and guess what? When the court said it in Judge Burns, he said, you know what, if I don't do that plus eight in that case, I'm giving the exact same sentence. And what did the Ninth Circuit turn around and said, you know what, you can't insulate the case from appellate review simply by saying, even as in as many words, I would have given the same sentence. So as a practical matter, I'm not sure why the government really cares. What we're talking about is a resentencing. If the one-point enhancement doesn't apply, the court has rights to apply a departure to account for the criminal conduct. Sure. The sentence could be the same or it could be worse for the defendant if it's resentenced. Well, I understand. But, you know, you could probably say that about most sentencing appeals that come to this court. I'd see it as my job simply to defend the record as it is. Here, this issue was preserved. It was litigated. You know, the defense was asking for 24 months in a case where somebody died and somebody was hurt. They didn't even skip a beat when the court said, you know what, I'm not going to group these offenses. All the government's saying is, if there's press in on the books, munos camerina, it's still valid law. It specifically describes a situation that applies to this case. At least one other panel has done that before, Solis. That's the government's, you know, that's me putting my best good faith effort forward. Of course it's always possible. Your time is up. Let me ask my question. All right. Thanks very much for the government. Appreciate it. Let's hear our reply, rebuttal. I'd like to try to make three points, two about the merits and one about harmlessness. First point is the government has relied heavily on the commentary, but the commentary can't expand the definition that's in the actual guideline. And again, as your point, Wayne Rostow clearly held that Congress had determined that such offenses are categorically groupable. Another key sentence, because the government has relied on, hey, but the facts of this case are different, is Wayne Rostow also said, if the offenses at issue are covered by one of the listed guidelines, we do not analyze the facts of the particular case. So the fact that there's some factual differences here about victims doesn't matter to the Ben Rostow analysis. A few things about harmlessness. I think the most important thing about harmlessness here is what the district court actually said. And the district court, and this is on ER 23, actually said with this guideline range in mind, meaning the incorrect guideline range, and then it conducted its 3553 analysis. So the lodestar of its analysis was on the incorrect guideline range, and we simply do not know what sentence the district court would get to if that guideline range was one level lower. Could have been five or six months less, and that's all we're asking for as a remand, to find that out. Other questions? Thank you. Thanks to both counsel for the argument. Case of United States versus Cubado-Moncada is submitted.
judges: SMITH, BADE, Fitzwater